IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$53,082,824.19 IN U.S. CURRENCY,<br><br>Defendant | No: 19-cv-01930<br>**FILED UNDER SEAL** |

## BSJI'S MOTION TO LIFT THE STAY OF CIVIL FORFEITURE PROCEEDINGS

Abbe David Lowell, *Pro hac vice* pending
Eric W. Bloom, *Pro hac vice* pending
Christopher D. Man, *Pro hac vice* pending
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5000 (Phone)
(202) 282-5100 (Fax)
adlowell@winston.com

Guillermo Ramos Luiña (USDC-204007)
PO Box 2763, UPR Station
San Juan, PR 00931-2763
(787) 620-0527 (Phone)
(787) 620-0039 (Fax)
gramlui@yahoo.com

*Counsel for Banco San Juan Internacional, Inc.*[1]

---

[1] Co-counsel for BSJI, DLA Piper, was not counsel for ███████████████ (No. 19-Misc.-163), which is sealed, and is thus not in possession of the materials from that matter referenced in this Motion. For this reason, this brief and its attachments have been prepared by undersigned counsel only.

Banco San Juan Internacional, Inc. (BSJI) opposes the government's Motion to Stay Civil Forfeiture Proceedings (Dkt. 5), which the Court granted yesterday before hearing from the Claimant (Dkts. 8 & 10).  BSJI has now filed its claim, well before its deadline to do so, and accordingly it invokes its due process right to respond and now moves for the Court to lift the stay. *See, e.g., Nelson v. Adams USA, Inc.*, 529 U.S. 460, 446 (2000) ("This opportunity to respond [is] fundamental to due process."); *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1989) ("The essential requirements of due process . . . are notice and an opportunity to respond."); *P.R. Med. Emergency Group, Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 326 F.R.D. 363, 365 (D.P.R. 2018) (explaining that new parties have a due process right to respond).

The government's twin filings—the Complaint for Forfeiture in Rem and its Motion to Stay—represent the latest in a long series of actions by the government either designed to close, or with the effect of closing, BSJI without affording it any due process.  Some of the government's actions ███████████████████████████; other of its actions have directly contradicted Department of Justice (DOJ) policy.

BSJI is prepared to presently litigate, on the merits, the government's forfeiture complaint, and it requires no secret grand jury or sensitive investigative material to do so.  No civil discovery is necessary, and the government need not resort to grand jury or investigative evidence.  Instead, as demonstrated by BSJI's Motions to Dismiss, the government's forfeiture complaint fails as a matter of law, on multiple grounds, on basic threshold questions.  The government's slapdash, three-page forfeiture complaint was not drafted with litigation in mind; it is instead clear that the skeletal complaint is intended only to preserve the government's unconstitutional seizure of *$53 million* for the foreseeable future, to deny BSJI an opportunity to litigate its merits for an extended period of time, and to cripple BSJI in the interim.  The government knows all too well that such

abusive tactics can kill a company, even if the company is legally vindicated in the end. *See Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) (unanimously reversing corporate conviction, but major company could not survive due to cloud over its head during litigation delays).

It is now *eight months* since the government initially seized the more than $53 million at issue in this action without any notice to BSJI. These funds represent a significant portion of the bank's operating funds and capital. Instead of timely filing the civil forfeiture action after the seizure, the government sat on its hands for most of the year while the bank has been forced to operate under the dark cloud of government-created adverse publicity and without access to its own $53 million. Now that a forfeiture action has been filed, the government still wants to prevent the legal process from going forward—this time by seeking a stay of the proceeding it just filed, despite waiting eight months to even make that filing. If the stay is granted, the funds will remain seized for *almost one year* (or more) without BSJI ever being afforded a meaningful opportunity to challenge this seizure of an extraordinary amount of money.

Nor does the government provide any meaningful justification for its requested 120-day stay. It instead presumes an entitlement to one, offering only a single, conclusory sentence that a stay is "necessary to avoid any prejudice to the ongoing criminal investigation." (Dkt. 5 at 2). But it is not sufficient for the government to parrot magic words; it must instead make the requisite *showing* that "civil discovery *will* adversely affect the ability of the Government to conduct a related criminal investigation" under 18 U.S.C. §981(g)(1). The government has made no effort to satisfy this standard, much less show that its interests, if any, in obtaining the stay exceeds BSJI's interest in moving forward. Moreover, given that the government publicized its search and seizure at BSJI through the media and gave an inflammatory press conference at the time (eight months ago), it is difficult to imagine how anyone involved could possibly be unaware of the

2

government's investigation, such that conducting discovery now would hinder its investigation all these months later. The government's Motion to Stay should be denied.

The government has succeeded in turning the legal process itself into the punishment. In these circumstances, this Court's intervention is necessary to ensure that BSJI is afforded due process at a time that due process is still meaningful. In the absence of such intervention, the government—win or lose—will have left BSJI crippled by its improper seizure of BSJI's money, its inappropriate public relations campaign against BSJI, and by its failure to afford BSJI a timely and meaningful opportunity to vindicate itself.

## FACTUAL BACKGROUND

### I.    BSJI

BSJI, incorporated in 2011, is an International Banking Entity (IBE) located in Guaynabo, Puerto Rico. The principal goal of IBEs is to attract United States and foreign investors to Puerto Rico. That public policy purpose existed long before the recent hurricane damage experienced by Puerto Rico, but that damage made the need for economic development in Puerto Rico even greater. IBEs also serve as a bridge between U.S. companies and foreign investors. BSJI offers business banking, including corporate accounts, premier corporate accounts, financing, credit cards; and personal banking, including personal accounts, premier personal accounts, fixed term deposits, and credit cards.

## II.    Federal Investigation

### A.    Search and Seizure at BSJI

On February 6, 2019, Federal Bureau of Investigation (FBI) agents executed a search warrant at BSJI.[2] Prior to and immediately after the search, DOJ violated its own policy by alerting the media to the pending execution of the warrant and by following up with a highly-inflammatory press conference on the day of the search. DOJ, 9 U.S. Attorney's Manual §1-7.710(C) (2018) ("In cases where a search warrant or arrest warrant is to be executed, no advance information will be provided to the news media without the express approval of the appropriate United States Attorney or Assistant Attorney General."). The media knew in advance of the execution of the warrant and televised the agents conducting the raid. *See* Notiseis 360 PR, *FBI realiza allanamiento en Banco San Juan Internacional en Guaynabo*, YOUTUBE (Feb. 6, 2019), https:// https://www.youtube.com/watch?v=NVt17yNnYGc. Following the media-covered search was a press conference outside of BSJI's offices on the same day. In that second media event, the FBI Special Agent in Charge of the San Juan FBI Office made prejudicial and inflammatory statements to the press that BSJI and its customers were being investigated for violating U.S. sanctions on Venezuela and money laundering, and suggested that they may have been involved in corruption, drug-trafficking, and terrorism – far different charges than those it has shifted to in filing the forfeiture complaint.[3] There can be no proper explanation for the tip to the media and then the full-blown, accusatory press conference, particularly when no charges had then (or even now) been brought.

---

[2] Danica Coto, *FBI Raids Puerto Rico Bank Amid Venezuela Sanction Probe*, AP, Feb. 6, 2019, https://www.apnews.com/efe9d78a67d0441eb557325a390920be.

[3] If the government was making such inflammatory statements publicly, we can only imagine what sort of claims it was making privately with BSJI's banking relationships such as Merrill Lynch, the Federal Reserve Bank of New York, and Western Union.

The press conference was a flagrant violation of DOJ policy that "DOJ generally will not confirm existence of or otherwise comment about ongoing investigations." DOJ, 9 U.S. Attorney's Manual §1-7.400(B) (2018). Under that policy, even when criminal charges are brought, DOJ's policy is that "communications with the media should be limited to the information contained in publicly available material, such as an indictment or other public pleadings," and must be issued with the caveat "that the charge is merely an accusation, and the defendant is presumed innocent until proven guilty." *Id.* 1-7.700(B), 1.7- 500(D). Prior to any trial, "DOJ personnel shall not make any statement or disclose any information that reasonably could have a substantial likelihood of materially prejudicing an adjudicative proceeding." *Id.* 1-7.600. To avoid "prejudice," DOJ prohibits "[s]tatements concerning anticipated evidence" or offering "[a]ny opinion as to the defendant's guilt" prior to conviction. *Id.* 1-7.610(E) & (F). Regrettably, the government's press conference essentially used DOJ's policy as a check-list for doing the opposite, much to the prejudice of BSJI and its customers.[4]

The press conference suggested the raid was prompted by BSJI's transactions with Petróleos de Venezuela S.A. (PDVSA), the Venezuelan state-owned oil and natural gas company. However, BSJI's loans to PDVSA fully complied with Executive Orders targeting PDVSA, as the agreements preceded the sanctions and BSJI had effectively terminated its relationship with PDVSA as of December 2018.

---

[4] Accordingly, if there is a grand jury investigating BSJI or its employees or customers, the government should be taking precautions to screen the grand jury for bias. *See* 28 U.S.C. §1866(c)(2) (court may exclude a juror from a grand or petit jury "on the ground that such person may be unable to render impartial jury service"); *Lawn v. United States*, 355 U.S. 339, 349-50 (1958) (The Supreme Court has "several times" ruled on the importance of an indictment being "returned by a legally constituted and nonbiased grand jury."); *see Costello v. United States*, 350 U.S. 359, 363 (1956) ("legally constituted and unbiased grand jury").

Despite being the impetus for the government's search warrants, the government does not contest these facts and has now moved on to a fraud theory in its complaint. But as shown below, and more fully in our accompanying response to the forfeiture complaint, the structure of the transactions was designed and contemporaneously blessed by some of the most experienced banking lawyers in the United States and in the world, including Hogan & Lovells, Reed Smith, Baker McKenzie, Shutts & Bowen, Allen & Overy, Mendoza Palacios, and DLA Piper; the accounting treatment for the transactions was blessed by BSJI's certified public accountants; and BSJI even initiated discussions with its local regulators at the time to ensure that they did not object. Far from hiding material facts, the suggestion that BSJI engaged in wrongdoing is refuted by the many professionals who reviewed, structured, and passed judgment on the transactions and have, unanimously, found them appropriate and lawful.

It may be that the U.S. Attorney's Office does not understand the transactions, but its effort to elevate what at best is an accounting dispute into something more lacks any basis in forfeiture law, much less in the criminal law.

### B.    Seizure of Funds

On February 7, the day after the FBI search, the Federal Reserve Bank of New York (FRBNY) informed BSJI that it had suspended FRBNY services used by BSJI based on "press reports" regarding the FBI search as well as unspecified "compliance-related concerns." On February 14, 2019, the FRBNY transferred more than $38 million from BSJI's account allegedly in compliance with a seizure warrant.[5] On February 26, 2019, debits of $10 million and $5 million were made from BSJI's accounts with Merrill Lynch. Merrill Lynch later confirmed that seizure

---

[5] ███████████████████████████████████████████████████████

orders were presented and referred BSJI to AUSA Edward Veronda, the prosecutor handling the matter in Puerto Rico.

**C.** ████████████████████████████████

Immediately after the search and seizure of BSJI's offices, counsel for BSJI and its majority shareholder, Marcelino Bellosta, attempted to contact AUSA Veronda and others within Puerto Rico's U.S. Attorney's Office. Thirteen attempts were made to start a dialogue,[6] but the government was unwilling to discuss the seizures or provide complete copies of the executed search warrants. ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

---

[6] Emails reflect efforts to communicate with or have a meeting with government counsel on February 7 (asking for attachment or exhibit to warrant), again on February 7 (again asking for attachment to the search warrant and noting that "agents seized Mr. Marcelino Bellosta's personal Apple Mac book"), February 20 (asking for "a copy of the seizure warrant"), February 25 (identifying laundry list of concerns and reaffirming request for "a copy of the warrant paperwork"), March 1 (requesting return of all electronic media), March 11, 13, 20, 22 and 26 (proposing and asking to meet), separate email of March 13 (proposing to talk or meet), and two letters of April 2 and April 8 from Mr. Bellosta's personal counsel and the Bank's separate counsel, respectively (reciting laundry list of concerns).





the government has opted to double down, now moving forward with a skeletal civil forfeiture complaint that it apparently hopes to never litigate. Such a result would turn BSJI's due process rights on its head. The government's Motion to Stay should be denied.

<b>ARGUMENT</b>

The government's Motion to Stay should be denied for at least three reasons. *First*, the government's single, conclusory statement regarding the adverse effect of the civil forfeiture proceeding is insufficient to carry its burden of showing under 18 U.S.C. §981(g)(1) that this action



9

"*will* adversely affect the ability of the [g]overnment to conduct a related criminal investigation or the prosecution of a related criminal case." *Second*, even though it was the *government's* burden in its moving papers to show that its investigation will be compromised by the civil proceeding and BSJI has no burden at all, BSJI in fact affirmatively shows below (and in its accompanying papers) that the civil action can proceed without prejudice to the government. *Third*, the ongoing delay violates BSJI's right to due process because BSJI will be denied a meaningful hearing at a meaningful time due to the government's significant delay in filing the civil forfeiture proceeding and threatens irreparable harm to the Bank.

**I.    The Government Fails To Carry Its Burden That The Forfeiture Proceeding "Will Adversely" Affect Any Ongoing Investigation**

The government's Motion to Stay should be denied because the government's single, conclusory sentence in support of its Motion does not evidence an adverse effect on the government's investigation.  It merely concludes, without any support, that a stay is necessary "to avoid any prejudice to the ongoing criminal investigation." (Dkt. 5 at 2).  On this basis alone the government's motion should be denied.

Section 981(g)(1) provides "the Court shall stay the civil forfeiture proceedings if the court determines that civil discovery *will* adversely affect the ability of the [g]overnment to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. §981(g)(1) (emphasis added).  "There is no presumption that civil discovery creates an adverse effect on the Government's related criminal proceeding and the Government must make an actual showing regarding the anticipated adverse effect." *United States v. $4,480,466.16 in Funds Seized*, 2019 WL 459645, at *3 (N.D. Tex. Feb. 6, 2019) (internal quotation omitted).

This "actual showing" standard requires more than speculation. *United States v. All Funds ($357,311.68)*, 2004 WL 1834589, at *2 (N.D. Tex. Aug. 10, 2004).  "Importantly, the

10

government's burden is not simply to show that civil discovery *could* adversely affect the criminal

case, but to show that civil discovery *will* adversely affect the criminal case." *United States v.*

*$3,592.00 in U.S. Currency*, 2016 WL 5402703, at *1 (W.D.N.Y. Sept. 28, 2016) (emphasis in

original).  Thus, "conclusory allegations" are insufficient.  *In re Republic Bank of Az. Accounts*,

774 F. App'x 400, 401 (9th Cir. 2019) (reversing stay under Section 981(g)(1) because the court

found "no basis outside of conclusory allegations in the records for such a stay").

Because a civil forfeiture always rests upon an alleged criminal violation, the government

can always make "conclusory allegations" that targets of a criminal investigation will obtain

discovery before they are formally charged or claim that discovery may not be reciprocal because

targets may invoke their Fifth Amendment rights, but such arguments are insufficient. *All Funds*,

2004 WL 1834589, at *2.

> [T]he Government's arguments do nothing more than speculate about how civil discovery
> will adversely affect its investigation.  Under either of the Government's theories, *every*
> civil forfeiture case with a related criminal investigation is entitled to a stay.  Such
> speculative and conclusory theories undercut the requirements of Section 981(g) *that the*
> *Government actually show that civil discovery will adversely affect its ability to conduct*
> *the criminal investigation.*

*Id.* (emphasis in original) (denying stay); *see United States v. $177,844.68*, 2015 WL 355495, at

*5 (D. Nev. Jan. 27, 2015) (same); *United States v. $423,059.02*, 2012 WL 1950218, at *1 (W.D.

Mo. May 30, 2012) (same).  To justify a stay, the government would have to identify "specific

discovery requests" that would be problematic, or explain how discovery would "compromise the

identity of confidential informants or cooperating witnesses." *All Funds*, 2004 WL 183459, at *2;

*see $3,592.00*, 2016 WL 5402703, at *2 (rejecting government's claimed need for a stay to protect

witnesses, case agents and investigators from depositions and discovery that a defendant is not

entitled in a criminal case, as these "possibilities and speculation" would "eviscerate the statute's

requirement of *demonstrating* that civil discovery *will* adversely affect a related criminal case.")

(emphasis in original); *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 209, 214 (D.D.C. 2014) (rejecting the possibility of document destruction to justify a stay because the government "cannot rest on speculation about what may happen"); *$423,059.02*, 2012 WL 1950218, at *1 (finding the government had made a more particular statement in alleging that a particular witness expressed safety concerns, but dismissing the concern because the government offered no evidence to substantiate it); *United States v. Real Prop. and Premises*, 657 F. Supp. 2d 1060, 1063-65 (D. Minn. 2009) (denying stay); *United States v. One J.P. Morgan Chase Bank Account*, 2006 WL 6562918 (W.D. Mich. Dec. 14, 2006) ("While the Government speaks in broad terms about inevitable disclosure of sensitive information through the discovery process, it fails to relate its generalizations to any particular aspect of its investigation or to provide anything more concrete than conclusory statements or speculation to support its claim that civil discovery would jeopardized the investigation").

The government often will not have a record to justify a stay until discovery begins and a "specific showing" of prejudice can be made based on actual discovery requests. *$3,592.00*, 2016 WL 5402703, at *2; *United States v. Leasehold Interests in 118 Ave. D., Apt. 2A*, 754 F. Supp. 282, 287 (E.D.N.Y. 1990). Even then, it will be rare that there will be "no lesser alternatives," "such as a protective order, or preliminarily limiting discovery to certain areas or types." *$3,592.00*, 2016 WL 5402703, at *2; *see United States v. 2013 Jeep Wrangler*, 2014 WL 4225089, at *1 (W.D. La. Aug. 26, 2014) (denying stay after identifying permissible areas of discovery and permitting the government to object is a problematic discovery request is made); *Sum of $70,990,605*, 4 F. Supp. 3d at 214 (ordering protective order instead of a stay).

Here, the government provides no specificity about how, in this case, civil discovery will *actually* adversely affect the criminal investigation. Nor can it.[11] Contrary to DOJ policy, the government has been proclaiming the purposes of its investigation from the proverbial rooftops for eight months. *See* Danica Coto, *FBI Raids Puerto Rico Bank Amid Venezuela Sanction Probe*, AP, Feb. 6, 2019[12] (FBI spokesman noted "agents had a search warrant to identify funds that might be linked to entities or individuals on the sanctions list" and that "officials suspect someone might have used the bank to launder money from a person or entity on that list"). If the government were truly concerned about its investigation, it would have followed DOJ policy and remained silent.

The government appears to arrogate to itself its decision to seize funds and hold those funds for as long as it wishes. That is not the law. Its robotic, skeletal, slapdash motion contains none of the information this Court needs to assess the government's boilerplate assertion that a stay is "necessary" (as opposed to a protective order). The government bears a burden, and it has made absolutely no effort to carry that burden. (Nor may it do in reply what it was required to do in its moving papers.) The government's motion should be denied. BSJI has no objection to allowing the government to approach the Court to address any specific discovery requests that it finds problematic, in the event the parties cannot resolve those discovery issues on their own.

## II. The Forfeiture Complaint Fails As A Matter Of Law And Thus Requires No Discovery, Thereby Protecting Any Hypothetical Governmental Interests

At a minimum, BSJI should at least be permitted to challenge the facial validity of the government's forfeiture complaint, that is, by arguing, at least initially, that the government is not entitled to forfeiture *even accepting the government's factual allegations as true*. This can be done

---

[11] The government has also had the last eight months (since the initial seizure) to fully investigate the issue. The government has provided no evidence of why that extended period of time was insufficient to conclude its investigation.

[12] Available at https://www.apnews.com/efe9d78a67d0441eb557325a390920be.

13

without discovery. In demonstration of this point, BSJI has on this day—nine days early—filed

its responses to the Forfeiture Complaint. (*See* accompanying Mots. to Dismiss (raising issues of

law and *not* requiring the government to disclose grand jury or investigatory matters); *see Sum of*

*$70,990,605*, 4 F. Supp. 3d at 214 (noting the defense can argue discreet motions and issues

without seeking problematic discovery).) As explained more fully in these several motions to

dismiss—putting aside that there has been no false statement, and instead accepting the

government's allegations as true for purposes of its motions to dismiss—the government's claim

is insufficient as a matter of law. (Mot. to Dismiss for Failure to State a Claim (heightened

pleading standard not met, wrong assets seized); Mot. to Dismiss Pursuant to 8th Amendment

(excessive fine for a no-loss offense).)

These threshold issues can be fully litigated to conclusion without requiring the

government to submit to discovery or otherwise to disclose investigatory matters. The case should

therefore be allowed to proceed at least through BSJI's various motions to dismiss precisely

because there can be no threat of harm to either party by doing so.

III.   **Grant of a Stay Will Deny BSJI a Meaningful Hearing at a Meaningful Time**

████████████████████████████████████████████████████

████████████████████████████████████ BSJI's Fifth Amendment due process rights

have been violated because of the almost eight months that have passed between seizure of the

more than $50 million and the government's filing of its civil forfeiture action. *See United States*

*v. Cills*, 698 F. Supp. 22, 24 (D.P.R. 1988) (delay in filing civil forfeiture of seven months deprived

claimant of his "property without *any* process of law") (emphasis in original); *In re Prop. Received*

*from Int'l Nutrition, Inc.*, 1994 WL 16483469, at *2 (D. Nev. July 9, 1994) ("No indictment has

been issued against INI and it has been deprived of its property for over eight months. Such a

deprivation of property without an indictment, raises concerns as to whether INI's Fifth

Amendment due process rights have been violated."); *see also United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 564 (1993) (applying Sixth Amendment speedy trial test of *Barker v. Wingo*, 407 U.S. 514 (1972), to decide Fifth Amendment due process claim for delay in filing a forfeiture action). This Fifth Amendment violation will be further exacerbated if, after the government finally got around to filing an action, it can remain stayed for yet an additional 120 days. *See United States v. $12,248 U.S. Currency*, 957 F.2d 1513, 1519 (9th Cir. 1991) ("Whenever the Government seizes a significant amount of money and withholds it for an unreasonable length of time without bringing charges and without offering evidence to justify its continued withholding and without any indication as to when if ever charges will be filed, the [claimant] suffers irreparable harm.") (quoting *Mr. Lucky Messenger Serv., Inc. v. United States*, 587 F.2d 15, 18 (7th Cir. 1978)).

This would result in BSJI being denied its more than $53 million for approximately one year without its day in court.[13] Because the government has not shown (and in fact cannot show) any actual harm to its governmental interests—something the government made no effort to do in its moving papers—these and related issues should be litigated in an expeditious manner. The government's effort to deny BSJI the right to challenge the government's attempted forfeiture of $53 million of its money should be denied.

---

[13]For a short time, from July 2, 2019 until August 12, 2019, BSJI tried to engage in a constructive dialogue with the government and agreed that it would not use this period of intermittent dialogue—six weeks—as grounds to oppose a forfeiture complaint. Even putting this time aside, the government still sat on the forfeiture action for more than six months and certainly had the entire time period to complete its investigation or at least submit a more fulsome forfeiture complaint. It did neither. DOJ Policy advises "when the Government seizes property but elects not to pursue administrative forfeiture as a remedy," the "U.S. Attorneys commence a civil judicial forfeiture action against that property within 150 days after the seizure." DOJ, *Asset Forfeiture Policy Manual 2019*, at 91 *available at* https://www.justice.gov/criminal-afmls/file/839521/download. The government blew passed the recommended filing deadline long ago even when excluding the six weeks of (very) intermittent dialogue.

## CONCLUSION

For the foregoing reasons, the Court should grant BSJI's Motion to Lift the Stay of Civil Forfeiture Proceedings.

Dated:  October 9, 2019

Abbe David Lowell, *Pro hac vice* pending
Eric W. Bloom, *Pro hac vice* pending
Christopher D. Man, *Pro hac vice* pending
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5000 (Phone)
(202) 282-5100 (Fax)
adlowell@winston.com

*/s/ Guillermo Ramos Luiña*
Guillermo Ramos Luiña (USDC-204007)
PO Box 2763, UPR Station
San Juan, PR 00931-2763
(787) 620-0527 (Phone)
(787) 620-0039 (Fax)
gramlui@yahoo.com

*Counsel for Banco San Juan Internacional, Inc.*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed on October 9, 2019 with the Clerk of Court using the CM/ECF system, which automatically sent a notice of electronic filing to all counsel of record.

*/s/ Guillermo-Ramos Luiña*
Guillermo Ramos Luiña

16