IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff | |
| v. | No: 19-cv-01930 |
| $53,082,824.19 IN U.S. CURRENCY, | |
| Defendant | |

**BANCO SAN JUAN INTERNACIONAL'S MOTION FOR COMPLIANCE
WITH THE FIFTH AND SIXTH AMENDMENTS**

Sonia Torres, Esq.
USDC-PR Bar No. 209310
Meléndez Torres Law PSC
MCS Plaza, Suite 1200
255 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 281-8100
Fax: (787) 281-8310
storres@melendeztorreslaw.com

Jonathan W. Haray, *Pro hac vice* pending
Courtney Saleski, *Pro hac vice* pending
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
Telephone: (202) 799-4000
Fax: (202) 799-5000
jonathan.haray@dlapiper.com
courtney.saleski@dlapiper.com

Abbe David Lowell, *Pro hac vice* pending
Eric W. Bloom, *Pro hac vice* pending
Christopher D. Man, *Pro hac vice* pending
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5000 (Phone)
(202) 282-5100 (Fax)
adlowell@winston.com

Guillermo Ramos Luiña (USDC-204007)
PO Box 2763, UPR Station
San Juan, PR 00931-2763
(787) 620-0527 (Phone)
(787) 620-0039 (Fax)
gramlui@yahoo.com

*Counsel for Banco San Juan Internacional, Inc.*

**INTRODUCTION**

It would seem axiomatic that the government cannot lower its burden of proof in a criminal proceeding from the beyond a reasonable doubt standard to a preponderance of the evidence standard simply by re-labeling a criminal cause of action as "civil," but that is what the government is trying to do here. Although civil forfeiture procedures would on their face appear to violate due process, they have been upheld based *only* upon their historical use at the time the Constitution was ratified. *J.W. Goldsmith, Jr.-Grant Co. v. United States*, 254 U.S. 505, 510 (1921). The problem here is that the government seeks to broaden the use of civil forfeiture beyond what was permissible at the time of the Founding, instead pursuing what our Founders would have recognized as a criminal forfeiture, and in a manner that has prompted several Supreme Court Justices to call its constitutionality into question.

Historically, civil forfeiture was "limited to a few specific subject matters, such as customs and piracy. Proceeding *in rem* in those cases was often justified by necessity, because the party responsible for the crime was frequently located overseas and thus beyond the personal jurisdiction of United States courts." *Leonard v. Texas*, 137 S. Ct. 847, 849 (2017) (Thomas, J., statement respecting denial of certiorari) (citing Stefan Herpel, *Toward A Constitutional Kleptocracy: Civil Forfeiture In America*, 96 Mich. L. Rev. 1910, 1918–1920 (1998)). More fundamentally, civil *in rem* actions "typically covered *only* the instrumentalities of the crime (such as the vessel used to transport the goods), not the derivative proceeds of the crime (such as property purchased with money from the sale of the illegal goods)." *Leonard*, 137 S. Ct. 847, 849 (2017) (Thomas, J., statement respecting denial of certiorari) (emphasis added).[1] Actions like the one that the

---

[1] The Supreme Court has identified various circumstances in which "Congress, despite its manifest intention to establish a civil, remedial mechanism, nevertheless provided for sanctions so punitive as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'" *United*

1

government brings here, seeking forfeiture of ill-gotten proceeds, are derived "from a different historical tradition: that of *in personam*, criminal forfeiture." *United States v. Bajakajian*, 524 U.S. 321, 332 (1998). This Court should look past the "civil" label that the government has affixed to it, as courts often have in the civil forfeiture context,[2] and treat this proceeding as the criminal case that it is. To do otherwise, and allow civil forfeiture to serve as a substitute for criminal proceedings would, as Justice Field warned nearly 150 years ago, "work[] a complete revolution in our criminal jurisprudence." *Miller v. United States*, 78 U.S. (11 Wall.) 268, 323 (1870) (dissenting).

Justice Thomas has called for courts to address "an important question: whether modern civil-forfeiture statutes can be squared with the Due Process Clause and our Nation's history." *Leonard*, 137 S. Ct. at 847 (Thomas, J., statement respecting denial of certiorari).[3] He explains

---

*States v. Ward*, 448 U.S. 242, 249 (1980) (citation omitted); *see, e.g.*, *In re Winship*, 397 U.S. 358, 365-66 (1970) ("[C]ivil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts. . . ."); *see also Foucha v. Louisiana*, 504 U.S. 71, 93-94 (1992) (Kennedy, J., dissenting) ("Compliance with the standard of proof beyond a reasonable doubt is the defining, central feature in criminal adjudication, unique to the criminal law.").

[2] The Supreme Court has recognized the punitive nature of civil forfeiture proceedings and treated them as criminal proceedings in a number of contexts. More than a century ago, the Supreme Court explained: "We are also clearly of opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offences committed by him, though they may be civil in form, are in their nature criminal." *Boyd v. United States*, 116 U.S. 616, 633-34 (1877) (affording owner of property subject to forfeiture protection under the Fourth Amendment and Fifth Amendment Self-Incrimination Clause in civil *in rem* proceedings). The Supreme Court recently reaffirmed that "civil *in rem* forfeitures are fines for purposes of the Eighth Amendment when they are at least partially punitive," *Timbs v. Indiana*, 139 S. Ct, 682, 690 (2019), and, in some circumstances, they are criminal proceedings in double jeopardy analysis, *Hudson v. United States*, 522 U.S. 93, 102 (1997) (replacing the test used in *United States v. Halper*, 490 U.S. 435 (1989), for determining whether civil-styled proceedings are criminal for double jeopardy purposes); *id.* at 111 (Stevens, J., concurring) (questioning whether the changed test "will actually affect the outcome of any cases"). Proceeding with this forfeiture action may, therefore, preclude a subsequent criminal prosecution.

[3] "The Supreme Court has not yet ruled on the constitutionality of the standard of proof for civil asset forfeiture." Stephen Moss, *Clear And Convincing Civility: Applying The Civil Commitment Standard Of Proof To Civil Asset Forfeiture*, 68 Am. U. L. Rev. 2257, 2262 (2019).

that civil forfeiture has been upheld "largely by reference to a discrete historical practice that existed at the time of the Founding," but he is "skeptical that this historical practice is capable of sustaining, as a constitutional matter, the contours of modern practice…." *Id.* at 848-49. "Whether forfeiture is characterized as civil or criminal carries important implications for a variety of procedural protections, including the right to a jury trial and the proper standard of proof. Indeed, . . . there is some evidence that the government was historically required to prove its case beyond a reasonable doubt." *Id.* at 849. The Court should find that the Fifth and Sixth Amendments place a burden on the government to prove its case to a jury beyond a reasonable doubt, such that the preponderance of the evidence standard of 18 U.S.C. §983(c) cannot be constitutionally applied.

## ARGUMENT

### I. SECTION 981(a)(1)(C) IS MODELED AFTER *IN PERSONAM* CRIMINAL FORFEITURES

Surely, the government must acknowledge that *in rem* civil forfeiture at the time of the Founding was limited to the forfeiture of contraband and the instrumentalities of a crime, but did not reach "the derivative proceeds of the crime (such as property purchased with money from the sale of the illegal goods)." *Leonard*, 137 S. Ct. at 849 (Thomas, J., statement respecting denial of certiorari); *see also Austin v. United States*, 509 U.S. 602, 627-28 (1993) (Scalia, J., concurring); Moss, *supra*, at 2262 ("Forfeiture practices and laws in Medieval England, Colonial America, and the United States pre-1970 allowed only for contraband and facilitating property forfeiture."). Rather, actions seeking the forfeiture of criminal proceeds were made by seeking "*in personam*, criminal forfeitures." *Bajakajian*, 524 U.S. at 332.

As noted above, that distinction made sense because early civil *in rem* proceedings were "limited" to offenses (customs and piracy) where the wrongdoers were frequently "beyond the personal jurisdiction of United States courts." *Leonard*, 137 S. Ct. at 849 (Thomas, J., statement

3

respecting denial of certiorari).  This necessity brought about the legal fiction that the property itself was the offender, so that inherently offensive property (contraband) and property that was itself the instrument of a crime could be remedied (forfeited).  *Austin v. United States*, 509 U.S. 602, 615-16 (1993).  Even then, the instrumentality itself was viewed narrowly, such that a ship used for piracy could be forfeited, but not its cargo.  *Id.* at 628 (Scalia, J., concurring).

British common law did provide that a convicted party, *following* his conviction for a felony or treason, would forfeit all of his real and personal property, not just whatever property was used in facilitating the offense of conviction.  However, the Framers of the U.S. Constitution rejected this tradition.  *Austin*, 509 U.S. at 613.  The Constitution itself limits forfeiture as a sanction for treason, U.S. Const., art. III, § 3, cl. 2, and the First Congress abolished forfeiture of estate as a punishment for felonies, Act of Apr. 30, 1790, ch. 9, §24, 1 Stat. 117.  *See Austin*, 509 U.S. at 613.  "Congress reenacted this ban several times over the course of two centuries." *Bajakajian*, 524 U.S. at 332 n.7.  This broader forfeiture under British common law could be imposed because it was an *in personam* proceeding, in which the Court had jurisdiction over the individual and could reach more than just the property before it in an *in rem* proceeding.

As shown below, Congress has altered the forfeiture laws, but these changes have raised new Constitutional questions—identified by Justice Thomas and others—that the Supreme Court has not yet addressed, questions that this Court will need to decide should it allow this dubious case to go to trial.  It was not until "very recently"—the 1970s—that "Congress resurrected the English common law of punitive forfeiture." *Id.* at 332 & n.7.  In addressing the criminal forfeiture statute, 18 U.S.C. §853, the Supreme Court explained: "Congress altered this distinction [between *in rem* and *in personam* actions] in enacting § 853 by effectively merging the *in rem* forfeiture proceeding with the *in personam* criminal proceeding and by expanding forfeiture to include not

4

just the 'thing' but 'property . . . derived from . . . any proceeds' of the crime." *Honeycutt v. United States*, 137 S. Ct. 1626, 1635 (2017) (alterations in original). Congress did the same in Section 981 by expanding the civil *in rem* proceeding so that it too could be used to secure forfeiture of not just the thing, but "proceeds" of the crime as well. 18 U.S.C. §981(a)(1)(C); *see United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 122 (1993) ("The original forfeiture provisions of the 1970 statute had closely paralleled the early statutes used to enforce the customs laws, the piracy laws, and the revenue laws: They generally authorized the forfeiture of property used in the commission of criminal activity. . . .  They applied to stolen goods, but they did not apply to proceeds from the sale of stolen goods."); Susan Klein, *Civil In Rem Forfeiture And Double Jeopardy*, 82 Iowa L. Rev. 183, 236-37 (1996) (federal civil forfeiture laws were not used to reach "proceeds" until 1978).

This merger of the more expansive forfeitures associated with the criminal process into proceedings governed by lesser civil standards raises serious constitutional issues.

> The substantive differences indicate either, if viewed charitably, Congress's lack of understanding of the remedial nature of and legitimate purposes behind in rem actions, or if viewed cynically, a deliberate attempt to fund law enforcement and punish criminals while bypassing ordinary criminal procedural protections. At the very least, the differences raise doubts regarding whether these new statutes exceed the historical rationales behind civil in rem forfeitures.

Klein, *supra*, at 200. Indeed, the Supreme Court has explained that even the country's early civil forfeiture law "seems to violate that justice which should be the foundation of the due process of law required by the Constitution," but upheld those narrower forfeiture laws only because of their historical use. *J.W. Goldsmith, Jr.-Grant Co.*, 254 U.S. at 510.

That is why Justice Thomas is "skeptical" that the Court's prior support for civil forfeiture proceedings can be used to justify "the contours of modern practice" now that they have expanded beyond their historical limits. *Leonard*, 137 S. Ct. at 849 (Thomas, J., statement respecting denial

5

of certiorari).  Other justices appear to agree.  *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1229 (2018) (Gorsuch, J., concurring) (noting "today's civil laws regularly impose penalties far more severe than those found in many criminal statutes," including "forfeiture provisions that allow homes to be taken," suggesting a heightened standard of review is necessary); *Austin*, 509 U.S. at 627-28 (Scalia, J., concurring) (addressing Eighth Amendment issues that arise in expanding *in rem* forfeiture beyond its traditional limits); *see also United States v. All Assets of Statewide Auto Parts Inc.*, 971 F.2d 896, 905 (2d Cir. 1992) (explaining the court "continue[d] to be enormously troubled by the government's increasing and virtually unchecked use of the civil forfeiture statutes and the disregard for due process buried in those statutes").

The Supreme Court has cautioned in the civil forfeiture context that "it makes sense to scrutinize governmental action more closely when the State stands to benefit."  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (quoting *Harmelin v. Michigan*, 510 U.S. 957, 979 n.9 (1991)); *see Leonard*, 137 S. Ct. at 849 (Thomas, J., statement respecting denial of certiorari) ("[B]ecause the law enforcement entity responsible for seizing the property often keeps it, these entities have strong incentives to pursue forfeiture.").  That the government wishes to grab $53 million under a more generous civil burden of proof is not surprising—they are, after all, acting as self-interested advocates—but it is not in keeping with the historical rights of the accused.

**II. THE FIFTH AND SIXTH AMENEMDNTS PRECLUDE FORFEITURE ABSENT JURY FINDINGS UNDER A BEYOND A REASONABLE DOUBT STANDARD**

Appreciating that historical practice does not support treating the modern civil *in rem* statutes as civil proceedings, Justice Thomas is right that "the Constitution presumably would require the Court to align its distinct doctrines governing other forms of punitive state action and property deprivation."  *Leonard*, 137 S. Ct. at 849 (Thomas, J., statement respecting denial of certiorari).  That standard is now familiar:  "Any fact that, by law, increases the penalty for a crime

6

is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103 (2013) (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)); *see Southern Union Co. v. United States*, 567 U.S. 343 (2012) (expanding *Apprendi* rule to reach criminal fines); *Hester v. United States*, 139 S. Ct. 509, 510 (2019) (Gorsuch, J., joined by Kagan, J., concurring in denial of certiorari) (suggesting *Apprendi* should be extended to restitution). This sort of reconciliation of modern law to comport with our Founder's understanding is not uncommon. *See Giles v. California*, 554 U.S. 353, 358 (2008) (holding that California's hearsay exception for forfeiture by wrongdoing was broader than at the Founding, so it could not qualify as a historical exception to the Confrontation Clause).

The Supreme Court already held that to comport with due process, civil *in rem* proceedings must satisfy the *Mathews v. Eldridge*, 424 U.S. 319 (1976), balancing test. *James Daniel*, 510 U.S. 43, 53 (1993). The *Mathews* test requires that balance be struck in the criminal context to place the highest legal burden on the government: "A person accused by the United States of committing a crime is presumed innocent until proven guilty beyond a reasonable doubt." *Kaley v. United States*, 571 U.S. 320, 357 (2014) (Roberts, C.J., dissenting); *see Winship*, 397 U.S. at 364 ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

In *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), the Supreme Court applied the *Mathews* test to invalidate a Colorado law that required a person who had paid costs, fees or restitution pursuant to a criminal conviction that had been found invalid to file an action for a refund in which they must prove their innocence by clear and convincing evidence to succeed. The Court explained that "Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions." *Id.* at 1256 (emphasis in original). "*Nelson* tends to support the

proposition that the preponderance of the evidence standard imposed on the government in civil forfeiture proceedings, which do not necessarily require a criminal conviction, should be heightened." Paul Avron, *Constitutional Issues Concerning Civil Forfeiture*, 65 Fed. Law. 56, 58 (2018); *see also* Barclay Johnson, *Restoring Civility – The Civil Asset Forfeiture Reform Act Of 2000: Baby Steps Toward A More Civilized Civil Forfeiture System*, 35 Ind. L. Rev. 1045 (2002) ("In a country based on the cry of life, liberty, and property, it is surprising that, barely two centuries after its founding, the government should help deprive its citizens of their core constitutional right to property based in a mere preponderance of the evidence."); Herpel, *supra*, at 1931 (explaining a "strong case can be made" for limiting forfeiture to its traditional forms and holding "forfeiture proceedings outside those areas must be criminal in form"). Nor can the government claim that the sky would fall as a result because numerous states already have raised the burden of proof as part of their own civil forfeiture reform process. Kelly Milliron, *Addressing Due Process Concerns: Evaluating Proposals For Civil Asset Forfeiture Reform*, 70 Fla. L. Rev. 1379, 1392 n.108 (2018) (listing states).

Maintaining the traditional criminal burden of proof and jury trial requirements also is consistent with the "historic preference against preconviction *forfeitures*." *Luis v. United States*, 136 S. Ct. 1083, 1094 (2016) (emphasis in original). As the First Circuit explained: "We are mindful of the well established rule that federal forfeiture statutes must be narrowly construed because of their potentially draconian effect." *United States v. Real Prop. at 221 Dana Ave.*, 261 F.3d 65, 74 (1st Cir. 2001). "Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226 (1939); *see United States v. Borromeo*, 945 F.2d 750, 752-53 (4th Cir. 1991) (noting forfeiture as a "traditionally-disfavored remedy;" that courts strictly construe rules governing

forfeitures; and "strict compliance with the letter of the law by those seeking forfeiture must be required"). Thus, "forfeiture statutes are strictly construed against the government." *United States v. $191,900.00 in U.S. Currency*, 16 F.3d 1051, 1068 (9th Cir. 1994). Given that forfeitures are disfavored, there is no reason to allow the government to obtain such a penalty more easily than any other criminal sanction.

## CONCLUSION

The Court should require the government to prove its case to a jury beyond a reasonable doubt to secure an *in rem* civil forfeiture.

Dated: October 9, 2019

*/s/ Sonia Torres*
Sonia Torres, Esq.
USDC-PR Bar No. 209310
Meléndez Torres Law PSC
MCS Plaza, Suite 1200
255 Ponce de León Avenue
San Juan, PR 00917
Telephone: (787) 281-8100
Fax: (787) 281-8310
storres@melendeztorreslaw.com

Abbe David Lowell, *Pro hac vice* pending
Eric W. Bloom, *Pro hac vice* pending
Christopher D. Man, *Pro hac vice* pending
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5000 (Phone)
(202) 282-5100 (Fax)
adlowell@winston.com

Jonathan W. Haray, *Pro hac vice* pending
Courtney Saleski, *Pro hac vice* pending
DLA Piper LLP (US)
500 8th Street NW
Washington, DC 20004
Telephone: (202) 799-4000
Fax: (202) 799-5000
jonathan.haray@dlapiper.com
courtney.saleski@dlapiper.com

*/s/ Guillermo Ramos Luiña*
Guillermo Ramos Luiña (USDC-204007)
PO Box 2763, UPR Station
San Juan, PR 00931-2763
(787) 620-0527 (Phone)
(787) 620-0039 (Fax)
gramlui@yahoo.com

*Counsel for Banco San Juan Internacional, Inc.*

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed on October 9, 2019 with the Clerk of Court using the CM/ECF system, which automatically sent a notice of electronic filing to all counsel of record.

                             */s/ Guillermo-Ramos Luiña*
                             Guillermo Ramos Luiña