IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

         *Plaintiff*,

    v.

$53,082,824.19 IN U.S. CURRENCY,

         *Defendant*.

No. 19-cv-01930

**FILED UNDER SEAL**

## BANCO SAN JUAN INTERNACIONAL'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO LIFT THE STAY OF CIVIL FORFEITURE PROCEEDINGS

Guillermo Ramos Luiña (USDC-204007)
PO Box 2763, UPR Station
San Juan, PR 00931-2763
(787) 620-0527 (Phone)
(787) 620-0039 (Fax)
gramlui@yahoo.com

Abbe David Lowell (*pro hac vice*)
Eric W. Bloom (*pro hac vice*)
Christopher D. Man (*pro hac vice*)
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5000 (Phone)
(202) 282-5100 (Fax)
adlowell@winston.com
ebloom@winston.com
cman@winston.com

Sonia Torres (USDC-209310)
Meléndez Torres Law PSC
MCS Plaza, Suite 1200
255 Ponce de León Avenue
San Juan, PR 00917
(787) 281-8100 (Phone)
(787) 281-8310 (Fax)
storres@melendeztorreslaw.com

Jonathan W. Haray (*pro hac vice*)
Courtney Saleski (*pro hac vice*)
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4000 (Phone)
(202) 799-5000 (Fax)
jonathan.haray@dlapiper.com
courtney.saleski@dlapiper.com

*Counsel for Banco San Juan Internacional, Inc.*

The government's opposition to Banco San Juan Internacional, Inc.'s ("BSJI") Motion to Lift the Stay rests on a faulty premise.  According to the government, "courts have held that, '[w]here civil discovery would subject the government's criminal investigation to 'early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding,' a stay should be granted.'"  (Dkt. 51 at 3 (the "Opposition") (citing, *inter alia*, *United States v. All Funds on Deposit in Suntrust Acc't No. 8359*, 456 F. Supp. 2d 64, 64-65 (D.D.C. 2006), and *United States v. One Assortment of Seventy-Three Firearms*, 352 F. Supp. 2d 2, 4 (D. Me. 2005)).)  In so doing, the government fatally ignores BSJI's willingness to forego discovery altogether and to accept the government's factual averments for purposes of BSJI's outstanding motions, because the forfeiture complaint is deficient *as a matter of law*.  At a minimum, therefore, this Court should expeditiously hear argument and resolve the pending motions, which BSJI submits should end the matter.

Even assuming that the government's complaint survives the pending motions to dismiss, and even if some discreet discovery were necessary at a later stage, the government has not shown that BSJI's requested discovery would be broader than would be "possible in the context of a criminal proceeding," or that this Court is incapable of managing any hypothetical discovery in a manner that would protect any legitimate interests the government might claim.  BSJI's cited authority amply demonstrates that the government must do more than simply assert that it will be harmed; it must instead make an "actual showing" of its claimed harm.  (Dkt. 17 at 10 (citing *United States v. $4,480,466.16 in Funds Seized*, 2019 WL 459645, at *3 (N.D. Tex. Feb. 6, 2019)).) The government's claim of harm is woefully premature, speculative and inadequate.

The notion that any party, much less the United States, should seize *more than $53 million* without affording the objecting party a right to be heard for a year is anathema to equity, common

sense, and law.  Accordingly, the stay should be lifted, and this Court should promptly adjudicate the propriety of the government's seizure of BSJI's funds.

## **ARGUMENT**

### I.    RESOLUTION OF BSJI'S MOTIONS WOULD NOT RESULT IN *ANY* CIVIL DISCOVERY, THEREBY VITIATING THE GOVERNMENT'S OPPOSITION TO LIFTING THE STAY IN RELEVANT PART

At the heart of the government's Opposition is its contention that lifting the stay would "permit[] the parties to proceed with what will *naturally* be civil discovery [that] will adversely affect the United States' ability to protect the ongoing criminal investigation."  (Dkt. 51 at 2 (emphasis added).)   The government therefore does not appear to object to the Court's consideration and resolution of BSJI's outstanding motions, which raise purely legal questions and for which discovery is not needed.  (*See* Dkt. 17 at 13-14 ("BSJI should at least be permitted to challenge the facial validity of the government's forfeiture complaint, that is, by arguing, at least initially, that the government is not entitled to forfeiture *even accepting the government's factual allegations as true*.  This can be done without discovery.") (citing to accompanying Mots. to Dismiss, *see* Dkts. 19, 20, 21, 23, and 26, raising issues of law and *not* requiring the government to disclose grand jury or investigatory matters)); *see also United States v. Sum of $70,990,605*, 4 F. Supp. 3d 209, 214 (D.D.C. 2014) (noting the defense can argue discreet motions and issues without seeking problematic discovery).)   The motions, which may resolve the dispute in its entirety, should proceed to resolution.

### II.    THE GOVERNMENT HAS NOT SATISFIED ITS BURDEN OF "ACTUALLY SHOWING" LIKELY PREJUDICE

Even if discovery at some point were to become necessary, the government must do more than merely assert that governmental interests will be harmed absent a stay.  It must instead make

an *actual showing* that it would be harmed.  The government has failed to satisfy this threshold requirement.

The government's cited cases are not to the contrary.   The government relies on three out-of-circuit, district court cases for its statement that it is "well settled" that 18 U.S.C. § 981(g)(1) *requires* a district court to stay the underlying forfeiture but only after, and if, the court first determines that civil discovery "will adversely affect an investigation or prosecution that is based upon the same facts that are involved in the forfeiture action."  (Dkt. 51 at 3).  Given that the Court has not yet even addressed the pending dispositive motions, and that it is premature for BSJI even to seek discovery at this point, it is doubly premature to speculate on whether some discovery, somewhere down the road, might adversely affect legitimate governmental interests, or whether the Court could instead manage discovery in a manner so as to protect the parties' respective interests.

Nor has the government addressed the many cases cited in BSJI's moving papers in support of the proposition that speculation of possible harm is insufficient.[1]  If the government could obtain

---

[1]  *See United States v. $4,480,466.16 in Funds Seized*, 2019 WL 459645, at *3 (N.D. Tex. Feb. 6, 2019) ("There is no presumption that civil discovery creates an adverse effect on the Government's related criminal proceeding and the Government must make an actual showing regarding the anticipated adverse effect.") (internal quotation omitted); *United States v. All Funds ($357,311.68)*, 2004 WL 183459, at *2 (N.D. Tex. Aug. 10, 2004) (the Government must "*actually show that civil discovery will adversely affect its ability to conduct the criminal investigation*.") (emphasis in original); *United States v. $3,592.00 United States Currency*, 2016 WL 5402703, at *1 (W.D.N.Y. Sept. 28, 2016) ("Importantly, the government's burden is not simply to show that civil discovery *could* adversely affect the criminal case, but to show that civil discovery *will* adversely affect the criminal case.") (emphasis in original); *In re Republic Bank of Arizona Accounts*, 774 F. App'x 400, 401 (9th Cir. 2019) (reversing stay under Section 981(g)(1) because the court found "no basis outside of conclusory allegations in the records for such a stay"); *United States v. One J.P. Morgan Chase Bank Account*, 2006 WL 6562918, at *2 (W.D. Mich. Dec. 14, 2006) ("While the Government speaks in broad terms about inevitable disclosure of sensitive information through the discovery process, it fails to relate its generalizations to any particular aspect of its investigation or to provide anything more concrete than conclusory statements or speculation to support its claim that civil discovery would jeopardized the investigation."); *see*

and maintain a stay in the current circumstances, where discovery has not yet even been sought, then a stay would truly be automatic any time a forfeiture action is filed during the pendency of a criminal investigation.  Indeed, the process in this case demonstrates the harm to this argument – the government simultaneously brought its civil action and asked for a stay.  It therefore created a legal limbo and Catch-22.  That is not how the statute is written, nor do the cases support such a proposition.  *See* cases cited in note 1.

Finally, even if BSJI's motions to dismiss were one day denied, and BSJI were to then ask for discovery that might implicate a legitimate governmental interest, a stay would hardly be "automatic," as the government now contends.   In the government's original motion to stay, government noted, correctly, that "[i]t is well established that courts *have the discretion* to stay proceedings," and "a court *may* stay civil proceedings."  (Dkt. 5 at ¶¶ 9, 10 (emphasis added).) The government further explained that "[b]efore granting a stay, a court must consider '*the competing interests* which will be affected by the granting or refusal to grant a stay.'"  (*Id.* at ¶ 10 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (emphasis added).)  Put differently, the government previously recognized—contrary to the position it offers in its opposition to lift the stay—that the grant of a stay is a matter of judicial discretion rather than "automatic."  (*See* Dkt. 51 at 3.)

The government's original (but now abandoned) position is more in harmony with that offered by the U.S. Supreme Court on the subject.  "A stay is an equitable remedy," *Nelson v. Campbell*, 541 U.S. 637, 649 (2004), and "[e]quitable relief is not granted as a matter of course."  *Salazar v. Buono*, 559 U.S. 700, 714 (2010).  Rather, because "[a] stay is an intrusion

---

*also United States v. $177,844.68*, 2015 WL 355495, at *5 (D. Nev. Jan. 27, 2015); *United States v. $423,059.02*, 2012 WL 1950218, at *1 (W.D. Mo. May 30, 2012); *United States v. Sum of $70,990,605*, 4 F. Supp. 3d 209, 214 (D.D.C. 2014).

into the ordinary processes of administration and judicial review," "[a] stay is not a matter of right, even if irreparable injury might otherwise result.  It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case."  *Nken v. Holder*, 556 U.S 418, 427, 433 (2009) (internal quotations and citations omitted).

The Supreme Court has imposed a clear statement rule, requiring Congress to use unmistakable language when it seeks to restrict the ability of a federal court to exercise its inherent equitable discretion, given that a Legislative Branch should ordinarily not dictate how federal courts should exercise the "judicial power" entrusted to them by Article III of the Constitution raises separation of powers issues.  In rejecting a similar claim to the one the government makes here, the Supreme Court explained:

> The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case.  Flexibility rather than rigidity has distinguished it.  The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims.  We do not believe that such a major departure from that long tradition as is here proposed should be lightly implied. . . . if Congress desired to make such an abrupt departure from traditional equity practice as is suggested, it would have made its desire plain.

*Hecht Co. v. Bowles*, 321 U.S. 321, 329-30 (1944).  The Supreme Court has now repeatedly explained:  "Of course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established principles….  Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987) (internal quotations and citations omitted).

While it is true that Section 981(g)(1) uses the language "shall stay" a forfeiture action when it is shown that discovery "will adversely affect an investigation or prosecution," the

Supreme Court has held that the equivalent language "shall be granted" does *not* restrict the federal courts' equitable discretion.  More is required.  *See Porter v. Warner Hldg. Co.*, 328 U.S. 395, 398 (1946); *Hecht*, 321 U.S. at 328-29.  That is particularly true when the statute provides other enforcement remedies, such as civil and criminal penalties, and contains exceptions.  *See, e.g.*, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 314 (1982).  The government has such alternative remedies available to it here; in fact, the government seeks to stay this civil proceeding that it brought precisely so that it may seek additional criminal remedies.  The statute also provides exceptions, making clear that "the court may determine that a stay is unnecessary" if a protective order concerning discovery is adequate, 18 U.S.C. § 981(g)(3).

The Supreme Court recognizes the district courts' inherent powers to grant—or not grant—stays as a matter of equity.  But to do equity requires a balance of the hardships, that is, to acknowledge both that BSJI has had an enormous amount of its funds seized—$53 million—and has been denied the ability even to challenge the government's seizure for nearly a year, and that the government has not yet completed its investigation.  BSJI presumes that this Court, armed with the knowledge of the government's factual allegations and supporting evidence, can manage any discovery in a manner that protects BSJI's legitimate interests while ensuring that the government's interests are not compromised.  And if there ever comes a point where discovery would compromise governmental interests, and the imposition of a protective order were not sufficient, the Court always retains the power to re-impose the stay.

As it is, the government has thrown together a slapdash, three-page forfeiture complaint and a similarly bare motion to stay, and simply presumes that it has done enough to prevent BSJI from exercising its due process rights.  The government is wrong.

**III.     THE STAY CONTINUES TO VIOLATE BSJI'S DUE PROCESS RIGHTS**

In deciding whether to continue to stay the instant action, this Court should consider the government's ongoing (and apparently) deliberate practice of depriving BSJI of its Fifth Amendment due process rights.  The government's significant delay in filing the civil forfeiture proceeding in the first place (from February to September 2019), combined with its immediate request for a 120-day stay, to be potentially further extended at the government's request, has already deprived BSJI of a meaningful hearing at a meaningful time on the government's seizure of $53 million of BSJI's funds for the better part of the year.  (*See* Dkt. 5 at ¶ 6 ("In addition, within those initial 120 days the United States will update the Court whether it is necessary to request the stay for an additional period of time, or if the stay should be lifted."); Dkt. 51 at 8 ("[T]he United States respectfully requests that the civil forfeiture proceedings remain stayed for *at least* 120 days … or until further order of this Court ….") (emphasis added).)  This particular U.S. Attorney's Office appears to have adopted a *practice* (in a number of cases) to delay filing for civil forfeiture, obtain lengthy and sometimes multiple stays, only to be followed by an indictment rather than having to defend the bona fides of the forfeiture complaint.  That runs afoul of the processes set forth by statute, and the deprivation of property for so long a period of time constitutes a fundamental violation of petitioner's due process rights.  (*See* Dkt. 17 at 14-15 (collecting cases).)[2]

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[2] The U.S. Attorney's Asset Forfeiture Policy Manual instructs the various U.S. Attorney's Offices to file a civil forfeiture action within 150 days of a corresponding seizure.  *Id.* at 15 n.13.  Even excluding the parties' negotiations for six weeks during the summer of 2019, *see id.*, the government well exceeded the recommended 150-day filing deadline by the time it eventually filed the forfeiture complaint against BSJI in September 2019.

 BSJI has already been the victim of overzealous governmental conduct; equity demands that it now be afforded the opportunity to challenge the seizure of its $53 million.

## IV.   BSJI CONTINUES TO FACE IRREPARABLE HARM BY THE GOVERNMENT'S CONTINUOUS SEIZURE OF BSJI'S FUNDS

The government's continuous seizure of BSJI's funds has caused BSJI to suffer irreparable harm.  (*See* Dkt. 17 at 15.)  This Court can take judicial notice that the loss of $53 million, especially for a financial institution that leverages its cash, necessarily causes the institution harm (the ever-increasing likelihood of the Bank closing for lack of funds and reputational damage) for which it can never be fully compensated.  *See, e.g.*, *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18-20 (1st Cir. 1996) (holding irreparable harm exists where a business "would lose incalculable revenues and sustain harm to its goodwill" and reputation, the injury of which is "not easily measured or fully compensable in damages," as a result of which "this kind of harm is often held to be irreparable"); *id.* at 20 ("To establish irreparable harm, … a plaintiff need not demonstrate that the denial of injunctive relief will be fatal to its business.  It is usually enough if the plaintiff shows that its legal remedies are inadequate.  If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel.") (internal citations omitted); *Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 332 (1st Cir. 1997) (affirming finding of irreparable harm, and *rejecting* the government's position that a potential harm cannot be deemed "irreparable" if it is of a kind that can be later compensated through money damages, because "the loss of a unique or fleeting business opportunity can

constitute irreparable injury," and further explaining that "[t]he concern in the present situation is clear: although we remain in the domain of economic profit or loss, a context in which compensation through legal remedies is preferred, as a practical matter the potential value of an evanescent business opportunity may be extremely difficult to measure, after the fact.").

The government's confiscation of the seized funds causes BSJI to lose about $100,000 every month in lost interest income alone.  Should this Court find that the government's seizure of BSJI funds was invalid and forfeiture inappropriate, the government still will not compensate BSJI for the accruing lost interest income, thus rendering the monetary harm to BSJI "irreparable" for purposes of the analysis.  Additionally, the government's seizure of the funds has forced BSJI to halt consideration of strategic acquisitions and partnerships as part of its 2019 business plan; it has further deprived BSJI of the ability to engage in new financial and capital intensive businesses, or to invest in securities on the market, thus losing out on the precipitous rise in the S&P 500.  The government's suggestion otherwise, namely that any party can be deprived of $53 million for almost a year and not suffer irreparable harm, belies common sense.

## V.     THE SEIZED FUNDS ARE NOT FORFEITABLE IN ANY EVENT

As we note in the accompanying Reply Brief in Support of BSJI's Motion to Dismiss Pursuant to the Eighth Amendment, the government claims that the "property is subject to forfeiture as proceeds" (*see* Dkt. 55 at 2), but appears to miscomprehend the statutory definition of "proceeds."

> The government's theory is that BSJI's *accounting* of two credit facilities was in error.  It does *not* contend that the underlying loans themselves were unlawful.  According to the government, the alleged accounting errors in relation to the credit facilities are "misrepresentations" giving rise to a "bank fraud."  However, the money that the government seized is the *repayment* of the subject loans.  (Dkt. 53 at 6.)  Even in the context of a fraudulent loan—and here there is not even an allegation that the loans themselves were fraudulent—repayments are not considered "proceeds."  To the contrary, repayments are to be deducted from the forfeiture.  18 U.S.C. § 981(a)(2)(C) ("In cases involving fraud in the process of

obtaining a loan or extension of credit, the court shall allow the claimant a *deduction* from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim.") (emphasis added). Thus, even if the government could prove some sort of fraud claim, the assets seized would not be subject to forfeiture.

Additionally, the government claims that it can forfeit all criminally derived proceeds that are used on the course of a money laundering transaction (Dkt. 55 at 2-3), but the government has failed to show that the transactions at issue involved criminally-derived proceeds or constitute money laundering. The government has suggested only that BSJI did something fraudulent in setting up these transactions in which it was paid, but the government has not alleged that the funds themselves were received by BSJI "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity." 18 U.S.C. § 1956(a)(1). Nor has the government alleged that the money PDVSA used to repay BSJI resulted from any illegal activity, such as drug trafficking, or that BSJI knew it to be. Consequently, even if the Court were to accept all the government's allegations in its complaint as true, whatever it is that the government thinks BSJI did wrong (but is afraid to say publicly, despite the fact that it has publicized its own investigation such that it is no secret), it is not money laundering.

(BSJI Reply Br. ISO Mot. to Dismiss Pursuant to the Eighth Amendment at 1-2.)

The government's theory of the case is at odds with the forfeiture criteria. The government claims that false statements were made to third parties (the Office of the Banking Commissioner of Puerto Rico and the Federal Reserve Bank of New York) regarding the accounting of otherwise lawful transactions, consistent with BSJI's lawful business. The $53 million of seized funds is itself *not* the result of an illegitimate business. That the government elevates an accounting issue into an alleged claim of fraudulent misrepresentation is itself specious—*every accounting dispute could give rise to such a claim*—but the government's insistent effort to render an alleged false representation to justify forfeiture of proceeds that are *not* the fruit of an alleged wrong should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court should grant BSJI's Motion to Lift the Stay of Civil Forfeiture Proceedings.

Dated: January 8, 2020

 /s/ Guillermo Ramos Luiña                           /s/ Abbe David Lowell
Guillermo Ramos Luiña (USDC-204007)        Abbe David Lowell (*pro hac vice*)
PO Box 2763, UPR Station                          Eric W. Bloom (*pro hac vice*)
San Juan, PR 00931-2763                           Christopher D. Man (*pro hac vice*)
(787) 620-0527 (Phone)                            Winston & Strawn LLP
(787) 620-0039 (Fax)                              1700 K Street, NW
gramlui@yahoo.com                                 Washington, DC 20006
                                                  (202) 282-5000 (Phone)
                                                  (202) 282-5100 (Fax)
                                                  adlowell@winston.com
                                                  ebloom@winston.com
                                                  cman@winston.com

Sonia Torres, Esq. (USDC-209310)          Jonathan W. Haray (*pro hac vice*)
Meléndez Torres Law PSC                            Courtney Saleski (*pro hac vice*)
MCS Plaza, Suite 1200                             DLA Piper LLP (US)
255 Ponce de León Avenue                          500 8th Street NW
San Juan, PR 00917                                Washington, DC 20004
Telephone: (787) 281-8100                         Telephone: (202) 799-4000
Fax: (787) 281-8310                               Fax: (202) 799-5000
storres@melendeztorreslaw.com                     jonathan.haray@dlapiper.com
                                                  courtney.saleski@dlapiper.com

*Counsel for Banco San Juan Internacional, Inc.*

11

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing was filed on January 8, 2020 with the Clerk of Court using the

CM/ECF system, which automatically sent a notice of electronic filing to all counsel of record.

*/s/ Abbe David Lowell*
Abbe David Lowell