IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | No. 19-cv-01930 |
| $53,082,824.19 IN U.S. CURRENCY, | |
| *Defendant*. | |

**BANCO SAN JUAN INTERNACIONAL'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO THE EIGHTH AMENDMENT**

Guillermo Ramos Luiña (USDC-204007)
PO Box 2763, UPR Station
San Juan, PR 00931-2763
(787) 620-0527 (Phone)
(787) 620-0039 (Fax)
gramlui@yahoo.com

Abbe David Lowell (*pro hac vice*)
Eric W. Bloom (*pro hac vice*)
Christopher D. Man (*pro hac vice*)
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5000 (Phone)
(202) 282-5100 (Fax)
adlowell@winston.com
ebloom@winston.com
cman@winston.com

Sonia Torres (USDC-209310)
Meléndez Torres Law PSC
MCS Plaza, Suite 1200
255 Ponce de León Avenue
San Juan, PR 00917
(787) 281-8100 (Phone)
(787) 281-8310 (Fax)
storres@melendeztorreslaw.com

Jonathan W. Haray (*pro hac vice*)
Courtney Saleski (*pro hac vice*)
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004
(202) 799-4000 (Phone)
(202) 799-5000 (Fax)
jonathan.haray@dlapiper.com
courtney.saleski@dlapiper.com

*Counsel for Banco San Juan Internacional, Inc.*

The government's claim that it is premature to know whether a forfeiture is grossly excessive for purposes of the Eighth Amendment until a forfeiture order is imposed ignores the facts of this case. While the Court cannot always predict what sort of damages it may impose at the outset of a case, the Court can determine whether the relief that a party seeks has gone too far. Where courts have frozen assets to cover potential liabilities, for example, courts are typically amenable to reducing the amount of assets frozen once it has been shown that more than necessary has been frozen to cover those potential liabilities. *See, e.g.*, *Datatech Enter. LLC v. FF Magnat Ltd.*, 2012 WL 4068624, *5 (N.D. Cal. Sept. 12, 2012). Here, the government cannot satisfy its claim for the seizure of $53 million.

To be sure, Banco San Juan Internacional, Inc. ("BSJI") has established that the government has failed to state a forfeiture claim (Dkt. 19), such that no forfeiture is warranted at all. Nevertheless, even if the government somehow could substantiate some part of its claim, the amount at issue would not begin to approach the more than $53 million seized by the government.

The government claims that the "property is subject to forfeiture as proceeds" (Dkt. 55 at 2), but then ignores the operative definition of "proceeds." The government's theory is that BSJI's *accounting* of two credit facilities was in error. It does *not* contend that the underlying loans themselves were unlawful. According to the government, the alleged accounting errors and related description of the transactions are "false[] represent[ations]" giving rise to a "bank fraud." (Dkt. 1 at 2-3.) However, the money that the government seized is the *repayment* of the subject loans, a point never contested by the government. Even in the context of a fraudulent loan—and here there is not even an allegation that the loans themselves were fraudulent—repayments are not considered "proceeds." To the contrary, repayments are to be deducted from the forfeiture. 18 U.S.C. § 981(a)(2)(C) ("In cases involving fraud in the process of obtaining a loan or extension of

credit, the court shall allow the claimant a *deduction* from the forfeiture to the extent that the loan was repaid, or the debt was satisfied, without any financial loss to the victim.") (emphasis added). Thus, even if the government could prove some sort of fraud claim, the assets seized would not be subject to forfeiture.

Additionally, the government claims that it can forfeit all criminally-derived proceeds that are used in the course of a money laundering transaction (Dkt. 55 at 2-3), but the government has failed to properly allege or demonstrate that the transactions at issue involved criminally-derived proceeds or constitute money laundering. The government has suggested only that BSJI did something fraudulent in setting up these transactions in which it was paid, but the government has not alleged that the funds themselves were received by BSJI "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity." 18 U.S.C. § 1956(a)(1). Nor has the government alleged that the money PDVSA used to repay BSJI resulted from any illegal activity, such as drug trafficking, or that BSJI knew it to be. Consequently, even if the Court were to accept all the government's allegations in its complaint as true, whatever it is that the government thinks BSJI did wrong (but is afraid to say publicly, despite the fact that it has publicized its own investigation such that it is no secret), it is not money laundering.

"For proceeds to be laundered, there must first be wrongfully obtained proceeds. Money laundering '[p]roceeds' are funds obtained from prior, separate criminal activity." *United States v. Phythian*, 529 F.3d 807, 813 (8th Cir. 2008) (quoting *United States v. Savage*, 67 F.3d 1435, 1441 (9th Cir. 1995)). "Congress appears to have intended the money laundering statute to be a separate crime distinct from the underlying offense that generated the money to be laundered." *Savage*, 67 F.3d at 1442 (quoting *United States v. Edgmon,* 952 F.2d 1206, 1213 (10th Cir. 1991)). In other words, "the transactions that created the proceeds must be distinct from the money-

laundering transaction," *United States v. Pogosian*, 754 F. App'x 545, 547 (9th Cir. 2018), or "[p]ut plainly, the laundering of funds cannot occur in the same transaction through which those funds first become tainted by crime." *United States v. Butler*, 211 F.3d 826, 830 (4th Cir. 2000).

The government makes additional categorical claims that are plainly wrong.  The government claims that "[f]orfeiture of property that is substantially connected to an offense can never be 'grossly disproportional'" (Dkt. 55 at 4 (quoting *Austin v. United States,* 509 U.S. 602, 627 (1993)), but the cases cited by the government stand for the *opposite* proposition.  First, the government's citation above to *Austin* is flat-out wrong; the government is not citing to the majority opinion, but to Justice Scalia's concurrence, which the majority rejected.  509 U.S. at 627 (Scalia, J., concurring).

Second, the whole purpose of the *Austin* majority decision was to open the door to Eighth Amendment challenges to civil forfeiture actions when the claimed forfeiture is excessive as compared to a statute's remedial aims.  *Id.* at 622.  There is no point in opening a doorway that could "never" be crossed.

Third, one of the cases cited by the government found that a forfeiture was excessive, which itself undercuts the government's knee-jerk assertion that it "never" can happen.  (Dkt. 55 at 4 (citing *von Hofe v. United States*, 492 F.3d 175, 184-85 (2d Cir. 2007)).)  Other courts have reached the same conclusion.  *See United States v. Ferro*, 681 F.3d 1105, 1116 (9th Cir. 2012).  Of course, most notably, the Supreme Court itself has found even a *criminal* forfeiture excessive.  *United States v. Bajakajian*, 524 U.S. 321, 339 (1998).  The First Circuit also has held that a forfeiture is excessive if it would deprive the claimant of his livelihood and remanded for that factor to be considered—a completely pointless exercise under the government's theory that forfeiture can "never" be excessive.  *United States v. Levesque*, 546 F.3d 78, 83-84 (1st Cir. 2008).

Finally, yet importantly, the cases inaccurately cited by the government involve something entirely different from the proceeds of crime; they involve instrumentalities of the crime. (Dkt. 55 at 4-5.) The government has not alleged, and could not plausibly allege, that the money at issue is the instrumentality of a crime. In *Bajakajian*, the Supreme Court addressed the forfeiture of currency that was being transported without being disclosed, and explained:

> The currency in question is not an instrumentality in any event. The Court of Appeals reasoned that the existence of the currency as a "precondition" to the reporting requirement did not make it an "instrumentality" of the offense. We agree; the currency is merely the subject of the crime of failure to report. Cash in a suitcase does not facilitate the commission of that crime as, for example, an automobile facilitates the transportation of goods concealed to avoid taxes.

524 U.S. at 334 n.9. The same is true here. The money allegedly being laundered did not launder itself; it is not the instrumentality of the alleged laundering, but the subject of the alleged wrongdoing, that is, it was the product of a legal transaction, a legal transaction that BSJI allegedly mislabeled.

For purposes of this Motion, BSJI has assumed the truth of the government's factual averments (as alleged in its forfeiture complaint), and yet the government still cannot justify its extraordinary overreach, especially in the amount seized.

Although the government has not established that *any* of the more than $53 million seized is subject to forfeiture, there is a middle ground. As BSJI noted, the Court could dismiss a claim for all but $3 million until the case is resolved on the merits. That is more than the forfeiture of 5% of the funds that was upheld in *Bajakajian*, and would provide a safety net if the government were ever to prove its case (something unnecessary, as any judgment by the Court against BSJI would reach its assets in any event). (Dkt. 20 at 3.) No more is warranted here. As in *Bajakajian*, the government cannot identify any victim who lost $53 million due to BSJI's conduct or establish

that the $53 million itself is tainted money due to drug sales or some other serious offense (or that

BSJI knew it to be).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should find that any forfeiture in this case, and

particularly the $53 million sought, would violate the Excessive Fines Clause of the Eighth

Amendment.  Alternatively, this Court should reduce the forfeiture claim by such amount as the

Court finds violative of the Eighth Amendment.

Dated:  January 8, 2020

<table>
<tr><td><i>/s/ Guillermo Ramos Luiña</i></td><td><i>/s/ Abbe David Lowell</i></td></tr>
<tr><td>Guillermo Ramos Luiña (USDC-204007)</td><td>Abbe David Lowell (<i>pro hac vice</i>)</td></tr>
<tr><td>PO Box 2763, UPR Station</td><td>Eric W. Bloom (<i>pro hac vice</i>)</td></tr>
<tr><td>San Juan, PR 00931-2763</td><td>Christopher D. Man (<i>pro hac vice</i>)</td></tr>
<tr><td>(787) 620-0527 (Phone)</td><td>Winston & Strawn LLP</td></tr>
<tr><td>(787) 620-0039 (Fax)</td><td>1700 K Street, NW</td></tr>
<tr><td>gramlui@yahoo.com</td><td>Washington, DC 20006</td></tr>
<tr><td></td><td>(202) 282-5000 (Phone)</td></tr>
<tr><td></td><td>(202) 282-5100 (Fax)</td></tr>
<tr><td></td><td>adlowell@winston.com</td></tr>
<tr><td></td><td>ebloom@winston.com</td></tr>
<tr><td></td><td>cman@winston.com</td></tr>
<tr><td>Sonia Torres, Esq. (USDC-209310)</td><td>Jonathan W. Haray (<i>pro hac vice</i>)</td></tr>
<tr><td>Meléndez Torres Law PSC</td><td>Courtney Saleski (<i>pro hac vice</i>)</td></tr>
<tr><td>MCS Plaza, Suite 1200</td><td>DLA Piper LLP (US)</td></tr>
<tr><td>255 Ponce de León Avenue</td><td>500 8th Street NW</td></tr>
<tr><td>San Juan, PR 00917</td><td>Washington, DC 20004</td></tr>
<tr><td>(787) 281-8100 (Phone)</td><td>(202) 799-4000 (Phone)</td></tr>
<tr><td>(787) 281-8310 (Fax)</td><td>(202) 799-5000 (Fax)</td></tr>
<tr><td>storres@melendeztorreslaw.com</td><td>jonathan.haray@dlapiper.com</td></tr>
<tr><td></td><td>courtney.saleski@dlapiper.com</td></tr>
</table>

*Counsel for Banco San Juan Internacional, Inc.*

**<ins>CERTIFICATE OF SERVICE</ins>**

I certify that the foregoing was filed on January 8, 2020 with the Clerk of Court using the

CM/ECF system, which automatically sent a notice of electronic filing to all counsel of record.

*<ins>/s/ Abbe David Lowell</ins>*
Abbe David Lowell